UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SANDRA H. ADAMS,

                        Plaintiff,

-against-

NORTHSTAR LOCATION SERVICES,
LLC, aka THE NORTHSTAR COMPANIES,

                        Defendant.

Index No.:

**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

---

      Plaintiff, SANDRA H. ADAMS, by counsel, Sanders & Sanders, complains as follows against Defendant NORTHSTAR LOCATION SERVICES; LLC:

### NATURE OF COMPLAINT

1.     This is a proceeding for declarative relief and damages for statutory violations of Plaintiff's rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §1981, ("Section 1981"), the Equal Pay Act, 29 U.S.C. §206(d) ("Equal Pay Act"), the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA") and the New York State Human Rights Law, Article 15 of the Executive Law, §290 et seq. ("New York HRL"). Plaintiff contends Defendant has intentionally discriminated against her because of her gender and in retaliation for her participation in matters of race and gender discrimination and has subjected her to retaliation including, without limitation, denying her equal terms and conditions of employment, including differential treatment with respect to wages. Plaintiff also contends Defendant has intentionally inflicted emotional distress on Plaintiff and has defamed her.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and § 1343(4) conferring original jurisdiction upon this court over any civil action to recover damages or secure equitable relief under any act of Congress providing protection of civil rights, under the Declaratory Judgment Statute, 28 U.S.C. § 2202.

3. The jurisdiction of this Court is called upon to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4. Venue is proper under 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff, Sandra Adams, has been a female citizen of the United States and the State of New York at all relevant times hereto.

6. Upon information and belief, Defendant Northstar Location Services, LLC ("Northstar") has its principal offices at 4285 Genesee Street, Cheektowaga, NY 14225 and is an employer within the meaning of Title VII, Section 1981, the Equal Pay Act, the FMLA and the New York HRL, employing at least 50 persons.

## STATEMENT OF CLAIM

7. At all relevant times, Northstar employed Plaintiff as Human Resources Director. Plaintiff began employment with Northstar in August of 2005.

8. Prior to Plaintiff's hiring by the Chairman of Northstar, Joel Castlevetere, also known as Joel Castle, she earned a law degree and had over 25 years of relevant experience in the human resources field.

9. At the time of Plaintiff's hire, she was the only human resources professional for Defendant, who employed approximately 50 employees at or about that time. By the time of her termination, employment was approximately 270 employees.

10. Plaintiff was responsible for investigating complaints of discrimination as well as interviewing applicants for new positions, which was a duty also performed by recruiters at various times during her employment.

11. During Plaintiff's tenure, the representation of minorities among management had remained limited. As of June 2005, all Collection Directors were white males. Of the twelve Collection Managers, all but one was white and two thirds were male, and of the non-collection salaried managers, only one was a minority.

12. In order to qualify Defendant as a woman owned business, Mr. Castle assigned titles to his sister and girlfriend, even though, upon information and belief, he holds a controlling ownership interest in Northstar.

13. Mr. Castle's companies have a prior history of unlawfully coding job applications. This resulted in a class action lawsuit that was ultimately settled in favor of the applicants.

14. In March of 2008, Plaintiff took an approved leave under FMLA, which lead to the reassignment of her job duties. Defendant later pointed to this as a reason for the elimination of Plaintiff's position.

3

15. In or about May 2008, Plaintiff was assigned to investigate a report made by a female African American employee that a white male employee, Mike Stearns, made a racial comment and yelled and swore at her.

16. Plaintiff met and took statements from two witnesses during investigation of the claim, but was later told that she would have no further role in the incident.

17. The female employee made a discrimination complaint against Northstar with the New York State Division of Human Rights, which was received by Plaintiff on behalf of Northstar on June 10, 2005.

18. Joel Castle falsely accused Plaintiff of "egging on" the employee to file a complaint.

19. When the female employee filed the charge with the Division, the charge was assigned to a different employee of the Defendant who had no human resources experience, and when Plaintiff tried to access incident report files, she found that they were missing. Plaintiff later learned that the Vice President of Operations had been told by Mr. Castle to take the files from Plaintiff's locked cabinets.

20. Senior management prevented Mr. Stearns's supervisor from firing him. Upon information and belief, this supervisor wanted to terminate Mike Stearns's employment. Mr. Stearns was later nominated for partner status.

21. Plaintiff was suspended by Joel Castle on June 12, 2005, her first day back to work immediately following Defendant's receipt of the complaint. She later received a letter from Northstar, dated June 20, 2005, terminating her employment, a blatant retaliatory effort on the part of the Defendant to punish the Plaintiff and prevent the complaint from being properly investigated.

22. During Plaintiff's employments, she witnessed and was a party affected by pay discrimination. In or about February 2008, Plaintiff reported a salary and bonus discrepancy to the Vice President of Operations. The discovery involved a department led by three managers, two male and one female, where the males had larger base salaries and were paid larger bonuses. The disparity was ultimately corrected, but the Plaintiff was no longer allowed access to payroll records showing bonuses or cumulative salary figures. This is another example of retaliation against the Plaintiff for performing her job duties.

23. Another example of discrimination occurred in March of 2008 when the Vice President of Operations planned to fire five minority employees, two African American males, one African American female, a homosexual and a white female. The executive had previously made derogatory comments about whether family members would be comfortable working with a gay employee. Even though Plaintiff was able to convince management that firing these employees would be inappropriate, within a short period of time, all but the white female had been either demoted or terminated.

24. Later in the Spring of 2008 the sole African American manager not in collections complained about a Caucasian male supervisor yelling at a minority female employee. Upon this matter being reported to Joel Castle, he became defensive and referred to this incident as "Obama business."

25. The Plaintiff herself is also a victim of pay discrimination based on gender in violation of the Equal Pay Act. Her salary was approximately $8,000 lower per year than a recently hired male recruiter even though Plaintiff had a longer tenure

with the Defendant and much more substantial relevant experience and responsibilities. The new recruiter was also eligible for collection management bonuses that could have totaled as much as $5,500, while the Plaintiff was eligible to receive bonuses of less than $100, as part of the support team.

26. Defendant has intentionally discriminated against Plaintiff based upon gender and retaliation under applicable federal and state law.

27. On June 12, 2008, Plaintiff was inexplicably suspended, and by letter dated June 20, 2008, Plaintiff was inexplicably terminated. Plaintiff was never given any formal explanation as to the reason for her suspension or termination, nor was she given the opportunity to address any concerns. Defendant subsequently claimed in the termination letter that the reason for the suspension and subsequent termination was due to a reassignment and job elimination.

## PROCEDURAL HISTORY

28. On December 23, 2008, Plaintiff filed a charge of discrimination with the New York State Division of Human Rights. (Exhibit A hereto)

29. On October 8, 2009, Plaintiff received an administrative convenience dismissal to permit her to file this action.

30. On September 22, 2009, Plaintiff requested a right to sue from the EEOC.

31. On September 25, 2009, Plaintiff received her right to sue letter. (Exhibit B hereto)

## FIRST CAUSE OF ACTION

## DISCRIMINATION AND RETALIATION IN VIOLATION OF TITLE VII

32. Plaintiff repeats and realleges every allegation in paragraphs 1 through 31 of this Complaint with the same force and effect as though fully set forth herein.

33. At all relevant times herein, Plaintiff was an employee within the meaning of Title VII.

34. Defendant engaged in a pattern and practice of discrimination against Plaintiff in violation of Title VII on the basis of gender and retaliation, including without limitation, Plaintiff's suspension and her termination.

35. As a direct result of Defendant's discrimination and retaliation against Plaintiff, Plaintiff has lost past and future wages and other employment benefits, and has suffered damage to her reputation and severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

36. Defendant's conduct was outrageous, was done in a deliberate and malicious manner, intended to injure Plaintiff and was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION

## DISCRIMINATION AND RETALIATION UNDER SECTION 1981

37. Plaintiff repeats and realleges every allegation in paragraphs 1 through 31 of this Complaint with the same force and effect as though fully set forth herein.

38. At all relevant times herein, Plaintiff was protected under Section 1981.

39. Defendant engaged in a pattern and practice of discrimination against Plaintiff in violation of Section 1981 on the basis of discrimination and retaliation resulting from Plaintiff's suspension and termination.

40. As a direct result of Defendant's retaliation discrimination against Plaintiff, Plaintiff has lost past and future wages and other employment benefits, and has suffered damage to her reputation and severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

41. Defendant's conduct was outrageous, was done in a deliberate and malicious manner, intended to injure Plaintiff and was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION

## DISCRIMINATION UNDER THE FMLA

42. Plaintiff repeats and realleges every allegation in paragraphs 1 through 31 of this Complaint with the same force and effect as though fully set forth herein.

43. At all times relevant herein, Plaintiff was an eligible employee who was entitled medical leave due to a serious health condition within the meaning of the FMLA.

44. Defendant engaged in a pattern and practice of discrimination against Plaintiff on the basis of her need to take a leave under the FMLA by reassigning her responsibilities and planning the reorganization of her department by failing to reinstate her to the same or an equivalent position at the end of her leave.

45. As a direct result of Defendant's discriminatory treatment, Plaintiff has lost past and future wages, bonuses and other employment benefits.

46. Defendant's conduct was not in good faith. Therefore, Plaintiff is entitled to an award of liquidated damages.

## FOURTH CAUSE OF ACTION

## GENDER DISCRIMINATION UNDER THE EQUAL PAY ACT

47. Plaintiff repeats and realleges every allegation in paragraphs 1 through 31 of this Complaint with the same force and effect as though fully set forth herein.

48. At all relevant times herein, Plaintiff was an employee protected under the Equal Pay Act.

49. Defendant engaged in a pattern and practice of discrimination against Plaintiff on the basis of gender in violation of the Equal Pay Act by subjecting Plaintiff to discrimination and retaliation as set forth above.

50. As a direct result of Defendant's gender discrimination against Plaintiff, Plaintiff has lost past and future wages and other employment benefits, and has suffered damage to her reputation and severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

51. Defendant's conduct was outrageous, was done in a deliberate and malicious manner, intended to injure Plaintiff and was done in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to an award of punitive damages.

## FIFTH CAUSE OF ACITON

## GENDER DISCRIMINATION AND RETALIATION UNDER NEW YORK HRL

52. Plaintiff repeats and realleges every allegation in paragraphs 1 through 31 of this Complaint with the same force and effect as though fully set forth herein.

53. At all relevant times herein, Plaintiff was an employee protected under New York HRL.

54. Defendant engaged in a pattern and practice of discrimination against Plaintiff in violation of New York HRL on the basis of gender and retaliation resulting from Plaintiff's suspension and termination.

55. As a direct result of Defendant's gender and retaliation discrimination against Plaintiff, Plaintiff has lost past and future wages and other employment benefits, and has suffered damage to her reputation and severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

WHEREFORE, Plaintiff requests relief as hereinafter provided:

a) Empanel a jury to hear Plaintiff's complaint;

b) Enter judgment declaring the acts and practices of Defendant to be in violation of the laws of the United States and the State of New York;

c) Issue a permanent injunction ordering Defendant to cease and desist from engaging in the illegal and unlawful acts and practices described herein;

d) Award Plaintiff the amount of wages, including fringe benefits, lost as a result of Defendant's discrimination;

e) Award Plaintiff consequential damages for losses resulting from Defendant's discrimination;

f) Award Plaintiff compensatory damages for losses resulting from Defendant's discrimination;

    g)    Award Plaintiff punitive damages;

    h)    Award Plaintiff the cost of this action, together with interest and reasonable attorney's fees.


Dated: Cheektowaga, New York
       December 1, 2009

                                            s/Harvey P. Sanders
                                            Harvey P. Sanders, Esq.
                                            SANDERS & SANDERS
                                            Attorneys for Plaintiff
                                            401 Maryvale Drive
                                            Cheektowaga, NY 14225
                                            (716) 839-1489
                                            Fax: (716) 839-1512

| | |
|---|---|
| STATE DIVISION OF HUMAN RIGHTS<br>STATE OF NEW YORK: EXECUTIVE DEPARTMENT | |
| SANDRA H. ADAMS,<br>　　　　　Complainant,<br><br>—against—<br><br>NORTHSTAR LOCATION SERVICES,<br>LLC, aka THE NORTHSTAR COMPANIES,<br><br>　　　　　Respondent. | VERIFIED COMPLAINT<br>Pursuant to Executive Law,<br>Article 15<br><br>Case No. _____ |

RECEIVED
JAN 12 2009
BUFFALO REGIONAL OFFICE

Exhibit A

　　　I, Sandra H. Adams, residing at 467 Potomac Avenue, Buffalo, New York 14213, charge the above-named Respondent, whose address is 4285 Genesee Street, Cheektowaga, NY 14225, with an unlawful discriminatory practice relating to my employment in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law) because of sex and retaliation.

Date most recent or continuing discrimination took place is the date of my termination (6/20/08).

The particulars are as follows:

1. I am female.
2. I began was hired by Joel Castlevetere (aka Joel Castle) to work for Respondent in August of 2005 as Human Resources Director. Prior to my employment with Respondent, I earned a law degree and I have over 25 years of relevant experience in the human resources field.
3. At the time of my hire, I was the only human resources professional for Respondent that employed approximately fifty employees. By the end of my tenure, employment was approximately 270 employees.
4. As part of my duties, I was responsible for investigating complaints of discrimination and I also interviewed some candidates for new positions (duties also performed by recruiters at various points in time)
5. Respondent's minority representation among management has been limited throughout my employment. At the time of my termination, all of the collection directors were white males. Of the twelve collection managers who reported to the directors, all but one are White and two thirds are male. Of the non-collection salaried managers, only one is a minority.
6. Respondent is functionally controlled by Joel Castle, its Chairman and Treasurer, who, upon information and belief, holds a controlling ownership interest in Respondent. Nonetheless, Mr. Castle has assigned titles to his sister and girlfriend, in an effort to qualify Respondent as a women-owned business.
7. Upon information and belief, a recruiter at the company was told to hire only the "right class" of employee, which was a reference to hiring White males. Indeed, at a previous company owned by Respondent, there was a history of coding job applications that lead to a class action lawsuit that was ultimately settled in favor of the petitioners.

1

8. On June 12, 2008, I was inexplicably suspended by Joel Castle. By letter dated June 20, 2008, I was inexplicably terminated. At no time was I given any formal explanation as to the reason for my suspension or my termination, nor was I given any meaningful opportunity to address any concerns.

9. Respondent subsequently claimed my separation was due to a reassignment and job elimination. In fact, I contend the suspension and termination are in retaliation for my role in a recent discrimination complaint by an employee (now pending before the New York State Division of Human Rights) and was part of an effort to prevent that complaint from being properly investigated and dealt with by Respondent. Said complaint had been received by Northstar the last day I worked before I was suspended.

10. The employee in question, a female African American, reported to me that a White male employee made a racial comment and yelled and swore at her. I met with and took statements from two witnesses. Although the White male's director wanted to fire the offending employee, the highest level of management stated he was not to be suspended or terminated, and that I was to have no further role in the incident. Senior management wanted him to remain employed and subsequently nominated him for Partner status.

11. When the aggrieved employee in question filed a charge with the Division, the charge was assigned to a different employee who had no human resources experience. When I looked for my incident report files, they were missing. The Vice President of Operations subsequently informed me that Joel Castle had told her to take the files from my locked cabinet.

12. At the time of my suspension, Joel Castle accused me of "egging on" the employee in question to file with the Division, even though I never did such a thing.

13. This is only the most recent example of the Company's refusal to properly investigate and address complaints of discrimination within its workplace – something I previously encouraged the Company to address. My suggestions have fallen on deaf ears.

14. For example, in or about February of 2008, I reported a salary and bonus discrepancy to the Vice President of Operations, where a particular department was jointly led by three managers – two male and one female – and the males had larger base salaries and were paid larger bonuses. While this disparity was ultimately corrected, I was no longer permitted access to payroll records showing bonus or cumulative salary figures.

15. Another example, in March of 2008, was when the Vice President of Operations wanted to fire five minority employees (two African American males, one African American female, a homosexual employee and a White female). I was able to convince management that this would be inappropriate – indeed, the executive had made derogatory comments about whether family members would be comfortable working with a gay employee. Despite my efforts, within a short period of time, all but the White female had been either demoted or terminated.

16. During the Spring of 2008, the sole African American (non-collection) manager complained about a Caucasian male supervisor yelling at a minority female employee (who also complained about the incident). When this matter was reported to Joel Castle, he became defensive and referred to this incident as "Obama business."

17. I am also a victim of pay discrimination. Upon information and belief, my salary was significantly lower (by approximately $8,000 per year) than a recently hired male recruiter, notwithstanding my longer tenure with the Company and my more substantial relevant experience and responsibilities. Upon information and belief, he was eligible for

      collection management bonuses that could be as much as $5,500, rather than the less than $100 that I was eligible for as a part of the support team.

18. In short, I believe I am a victim of discrimination based on gender and retaliation under applicable federal and state laws.

*Sandra H. Adams*
Sandra H. Adams

STATE OF NEW YORK )
COUNTY OF ERIE ) SS:

Sandra Adams, being duly sworn, deposes and says: that she is the complainant herein; that she has read the foregoing complaint and knows the content thereof; that the same is true of her own knowledge except as to the matters therein stated on information and belief; and that as to those matters, she believes the same to be true.

Subscribed and sworn to
before me this 23rd day
of December, 2008

_____
Notary Public

Sandra Adams

HARVEY SANDERS
Notary Public, State of New York
Qualified in Erie County
My Commission Expires July 6, 20 10

4

| EEOC Form 161-B (3/98) | U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION |
|---|---|

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To: Sandra H. Adams
467 Potomac Avenuue
Buffalo, NY 14213

From: New York District Office
33 Whitehall Street
5th Floor
New York, NY 10004

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2009-01797 | John B. Douglass, Supervisory Investigator | (212) 336-3765 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_[signature]_

Spencer H. Lewis, Jr.,
Director

09/25/2009
(Date Mailed)

Enclosures(s)

cc: **NORTHSTAR LOCATION SERVICES, LLC, A**
4285 Genesee Street
Cheektowaga, NY 14225

HARVEY P. SANDERS
Sanders & Sanders Attorneys at Law
401 Maryvale Drive
Cheektowaga, NY 14225

Exhibit B