UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SANDRA H. ADAMS,

        Plaintiff,

   -vs-               09-CV-1063-JTC

NORTHSTAR LOCATION SERVICES, LLC,

        Defendant.

---

APPEARANCES: SANDERS & SANDERS (HARVEY P. SANDERS, ESQ., OF COUNSEL), Cheektowaga, New York, for Plaintiff.

         MATTAR, D"AGOSTINO & GOTTLIEB, LLP (DIANA B. CAVELL, ESQ., OF COUNSEL), Buffalo, New York, for Defendant.

## INTRODUCTION

Plaintiff Sandra Adams commenced this action against her former employer, defendant Northstar Location Services, LLC, on December 16, 2009 (Item 1). She asserts claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); 42 U.S.C. § 1981; the Equal Pay Act, 29 U.S.C. § 206(d); the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"); and the New York State Human Rights Law, Executive Law § 290, *et seq.* ("NYSHRL"). On February 16, 2010, defendant moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, claiming that plaintiff has failed to state a claim upon which relief can be granted. In the alternative, defendant seeks an order pursuant to Rule 12(f) striking paragraphs 11, 12, 13, 19, 20, 23, 24, 28, 29, and 30 and Exhibit A to the complaint as "immaterial, impertinent and/or scandalous" (Item 6, ¶ 2). For the following reasons,

defendant's motion to dismiss is granted in part and denied in part. The motion to strike is granted in part.

## BACKGROUND and FACTS

Plaintiff began working for defendant in August 2005 as a "Human Resources Director" (Item 1, ¶ 7). According to the complaint, "[p]laintiff was responsible for investigating complaints of discrimination as well as interviewing applicants for new positions . . . ." *Id.,* ¶ 10.

Plaintiff alleges that in March 2008, she "took an approved leave under FMLA, which lead [sic] to the reassignment of her job duties" (Item 1, ¶ 14). In approximately May 2008, plaintiff claims she "was assigned to investigate a report made by a female African American employee that a white employee, Mike Stearns, made a racial comment and yelled and swore at her." *Id.,* ¶ 15. As part of her duty to investigate such reports, plaintiff interviewed two witnesses "but was later told that she would have no further role in the incident." *Id.,* ¶ 16. On June 10, 2008,[1] plaintiff received, on behalf of defendant, the employee's discrimination complaint filed with the New York State Division of Human Rights ("SDHR"). *Id.,* ¶ 17. Plaintiff alleges that Joel Castle, Northstar's chairman, "falsely accused Plaintiff of 'egging on' the employee to file a complaint." *Id.,* ¶ 18. Defendant then assigned the discrimination case to a different employee. *Id.,* ¶ 19. Plaintiff claims she "tried to access incident report files" and "found that they were missing." *Id.* Plaintiff

---

[1]Plaintiff's complaint contains several errors regarding the dates such events took place. For example, the complaint states this incident occurred on June 10, 2005, which, if true, would have occurred before plaintiff was even hired by defendant. Two other dates are similarly misstated. The court has assumed these were typographical errors and has understood such events to have occurred in 2008, rather than 2005.

2

alleges that "the Vice President of Operations had been told by Mr. Castle to take the files from Plaintiff's locked cabinets." *Id.*

Plaintiff also alleges that she discovered and reported a "salary and bonus discrepancy to the Vice President of Operations" in February 2008 (Item 1, ¶ 22). She claims "[t]he disparity was ultimately corrected, but the Plaintiff was no longer allowed access to payroll records showing bonuses or cumulative salary figures," and this was an example of "retaliation against the Plaintiff for performing her job duties." *Id.* Plaintiff also claims that in March 2008, she "was able to convince management" that firing three African-American employees, one homosexual employee, and one female employee "would be inappropriate." *Id.,* ¶ 23.

Plaintiff alleges that defendant subjected her to "pay discrimination based on gender in violation of the Equal Pay Act" (Item 1, ¶ 25). She alleges that her salary "was approximately $8,000 lower per year than a recently hired male recruiter." *Id.* She contends that "[t]he new recruiter was also eligible for collection management bonuses that could have totaled as much as $5,500, while the Plaintiff was eligible to receive bonuses of less than $100, as part of the support team." *Id.*

Plaintiff alleges that on June 12, 2008 she was "inexplicably suspended, and by letter dated June 20, 2008, Plaintiff was inexplicably terminated" (Item 1, ¶ 27). She claims she was "never given any formal explanation as to the reason for her suspension or termination." *Id.* However, she also states that "[d]efendant subsequently claimed in the termination letter that the reason for the suspension and subsequent termination was due to a reassignment and job elimination." *Id.*

## DISCUSSION

Defendant has moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Such a motion "tests the legal sufficiency of plaintiff's claim for relief." *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 511 (S.D.N.Y. 2010). All well-pleaded facts must be construed in plaintiff's favor. *Id.* Such a "presumption of truth, however, does not extend to legal conclusions." *Id.* at 511-12. According to the standard articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), plaintiff is required to plead facts sufficient "to state a claim to relief that is plausible on its face," enough to nudge the "claims across the line from conceivable to plausible." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal,* ____ U.S.____, 129 S.Ct. 1937, 1949 (2009) (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

Additionally, in *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), the Supreme Court held that there is no heightened pleading requirement for Title VII cases, and that an employment discrimination complaint need not allege specific facts that establish a *prima facie* case of discrimination. *Id.* at 514. Instead, the Court stated that, under Rule 8 of the Federal Rules of Civil Procedure, an employment discrimination complaint "must include only a short and plain statement of the claim . . . [that] give[s] the defendant fair

4

notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 512 (internal quotation marks omitted).

### 1. Title VII and NYSHRL Discrimination Claims

Plaintiff has alleged discrimination under both Title VII and the NYSHRL. As the standard for determining whether plaintiff has stated a legal claim is the same for both statutes, they will be analyzed together. *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006).

Title VII makes it unlawful for an employer or labor organization "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §§ 2000e-2(a), (c). In order to state a *prima facie* claim under Title VII, plaintiff must show that (1) she is a member of a protected class; (2) she was performing her duties satisfactorily; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination on the basis of her membership in the protected class. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). In opposition to a 12(b)(6) motion, it is not necessary for plaintiff to establish a *prima facie* case; however, the court should use the *prima facie* standard "as a measure of legal feasibility." *Racker v. St. Bonaventure Univ.*, 2005 WL 1522797, at *4 (W.D.N.Y. June 28, 2005) (internal quotation marks omitted). "[T]he court's task at the Rule 12(b)(6) stage is not to assess the likelihood that the plaintiff will ultimately prevail on the merits, but simply to assess whether the plaintiff is entitled to offer evidence in support of the claims asserted in the pleadings." *Id.*

5

Plaintiff has alleged that she is a member of a protected class and that she was performing her duties in a satisfactory manner, in satisfaction of the first two prongs of the *prima facie* case. She has also alleged that she was removed from the investigation of a race discrimination complaint, was denied access to payroll records, was subjected to pay discrimination, was suspended, and her employment was terminated, all on the basis of her gender. The Second Circuit has deemed certain employment actions sufficiently disadvantageous to constitute an adverse employment action for purposes of a discrimination claim, including "'a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir.2008) (quoting *Williams v. R.H. Donnelly, Corp*. 368 F.3d 123, 128 (2d Cir. 2004) (internal quotation marks omitted)). For purposes of this motion, the court finds that plaintiff has alleged a sufficiently adverse employment action in that she was suspended and terminated.[2]

Assuming that plaintiff has sufficiently alleged the first three prongs of her Title VII discrimination claim, she has failed to allege the fourth, that her suspension and discharge occurred under circumstances giving rise to an inference of gender discrimination. Facts which give rise to an inference of discrimination may be examples of the defendant criticizing plaintiff's performance in gender-degrading terms, making "invidious comments

---

[2] The court finds that the denial of plaintiff's access to payroll records and the reassignment of an investigation to another employee do not constitute adverse employment actions for purposes of a Title VII discrimination claim, as these two actions did not effect "'a materially adverse change in the terms and conditions'" of plaintiff's employment. *See Demoret v. Zegarelli,* 451 F.3d 140, 151 (2d Cir. 2006) (quoting *Fairbrother v. Morrison,* 412 F.3d 39, 56 (2d Cir. 2005)).

about others in employee's protected group . . . or the more favorable treatment of employees not in the protected group . . . ." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (internal cites omitted). Here, plaintiff has failed to allege facts showing that her suspension and termination give rise to an inference of gender discrimination. In her complaint, plaintiff states that she was "inexplicably terminated" and alleges that defendant later stated that her termination was due to "a reassignment and job elimination" (Item 1, ¶ 27). Additionally, the complaint merely alleges that "[d]efendant has intentionally discriminated against Plaintiff based upon gender and retaliation under applicable federal and state law." *Id.*, ¶ 26. Plaintiff does not allege circumstances of gender discrimination which would create an inference that her termination was due to something other than the reasons defendant proffered. "Merely checking off boxes . . . does not wholly satisfy plaintiff's burden under the Federal Rules of Civil Procedure." *Edwards v. Sheehan Mem'l Hosp.*, 2000 WL 914131, at *2 (W.D.N.Y. 2000) (dismissing plaintiff's claim because it failed to describe the alleged discriminatory acts with any specificity beyond "generalized and conclusory allegations"). Plaintiff's vague and conclusory allegations fail to satisfy the 12(b)(6) standard with respect to her gender discrimination claim.

**2. Retaliation**

Plaintiff also alleges a claim of retaliation under Title VII and the NYSHRL. Section 704(a) of Title VII makes it unlawful to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an

7

investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); *Deravin v. Kerik*, 335 F.3d 195, 203 (2d Cir. 2003). Thus, section 704(a) "has two separate clauses: an opposition clause as well as an independent participation clause." *Deravin*, 335 F.3d at 203 n.6. The opposition clause requires that the plaintiff take, or threaten to take, some action to protest or oppose illegal discrimination. *See Deravin*, 335 F.3d at 204. This can include informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry, and expressing support of co-workers who have filed formal charges. *Sumner v. U.S. Postal Serv.,* 899 F.2d 203, 209 (2d Cir. 1990). As for the "participation clause," the Second Circuit has recognized "the explicit language of § 704(a)'s participation clause is expansive and seemingly contains no limitations." *Deravin,* 335 F.3d at 203. Specifically, the words "participate in any manner" express Congress's intent to confer "exceptionally broad protection" upon employees involved in a Title VII proceeding. *Id.* However, the plaintiff must "participate" in the context of a formal Title VII proceeding. *See Correa v. Mana Prods., Inc.,* 550 F. Supp. 2d 319, 329 (E.D.N.Y. 2008).

To establish a *prima facie* case of retaliation, plaintiff must show that (1) she was engaged in activity protected under Title VII; (2) her employer was aware of that activity; (3) she suffered a materially adverse action; and (4) there was a causal connection between the protected activity and the adverse action. *Martin v. MTA Bridges & Tunnels*, 610 F. Supp. 2d 238, 254 (S.D.N.Y. 2009). Here, plaintiff alleges that in February 2008, she "reported a salary and bonus discrepancy" between two male managers and a female

8

manager (Item 1, ¶ 22).  She also alleges that in March 2008, she convinced management not to terminate certain minority employees.  In response, she claims defendant retaliated against her in that she was "no longer allowed access to payroll records showing bonuses or cumulative salary figures."  *Id.*  Finally, plaintiff alleges that in May 2008, she investigated the race discrimination claim of a co-worker and received the employee's SDHR claim as a representative of the defendant corporation.  In response, plaintiff alleges that she was removed from the investigation, was falsely accused of "egging on" the employee to file a claim with the SDHR, and was finally suspended and terminated.

Plaintiff has adequately pleaded protected activity for purposes of her retaliation claim under the "opposition clause."  In order for the court to find that a human resources manager has engaged in protected activity, the plaintiff must allege that she stepped outside her role of representing the company and either filed, or threatened to file, an action adverse to the employer, actively assisted other employees in asserting Title VII rights, or otherwise engaged "in activities that reasonably could be perceived as directed towards the assertion of rights . . . ."  *Ezuma v. City University of New York,* 665 F. Supp. 2d 116, 122 (E.D.N.Y. 2009), *aff'd,* 367 Fed. Appx. 178 (2d Cir. 2010) (quoting *McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486-87 (10th Cir.1996)).  Here, plaintiff alleges that she reported a gender-based pay and bonus discrepancy to the Vice President of Operations, and she persuaded management that it would be "inappropriate" to fire certain minority employees.  It could be argued that raising the pay discrepancy with management was within the scope of plaintiff's duties, but plaintiff's advocacy for certain minority employees was an "assertion of rights" and thus would constitute protected activity.  In contrast, plaintiff's actions in investigating the complaint of race-based harassment would

9

not constitute protected activity, as plaintiff was acting in the scope of her employment as a human resources director by interviewing the witnesses to the incident. Additionally, plaintiff does not allege that she played any part in encouraging the employee to file a formal charge with the SDHR or otherwise advocated for the employee. To the extent that plaintiff alleges she was retaliated against for a perceived support of the employee, she has provided no case law, nor has the court uncovered any in its research, to support such a theory of liability.

Additionally, plaintiff has adequately pleaded the remaining elements of the *prima facie* case. Her employer knew of her protected activity, as she reported the pay discrepancy and advocated for the minority employees directly with management. She suffered adverse employment action in that she was denied access to files, had duties taken away, was suspended, and her employment was terminated. A trier of fact could find that these actions might well dissuade "a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006) (internal quotation marks omitted). Finally, the adverse employment actions occurred in close temporal proximity to the instances of protected activity. *See Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir. 1998). Plaintiff reported the salary discrepancy in February 2008, advocated for the minority employees in March 2008, took family/medical leave in March, and was suspended and terminated in June 2008. Accordingly, the court finds that plaintiff has adequately alleged a claim for retaliation.

not constitute protected activity, as plaintiff was acting in the scope of her employment as a human resources director by interviewing the witnesses to the incident. Additionally, plaintiff does not allege that she played any part in encouraging the employee to file a formal charge with the SDHR or otherwise advocated for the employee. To the extent that plaintiff alleges she was retaliated against for a perceived support of the employee, she has provided no case law, nor has the court uncovered any in its research, to support such a theory of liability.

Additionally, plaintiff has adequately pleaded the remaining elements of the *prima facie* case. Her employer knew of her protected activity, as she reported the pay discrepancy and advocated for the minority employees directly with management. She suffered adverse employment action in that she was denied access to files, had duties taken away, was suspended, and her employment was terminated. A trier of fact could find that these actions might well dissuade "a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006) (internal quotation marks omitted). Finally, the adverse employment actions occurred in close temporal proximity to the instances of protected activity. *See Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir. 1998). Plaintiff reported the salary discrepancy in February 2008, advocated for the minority employees in March 2008, took family/medical leave in March, and was suspended and terminated in June 2008. Accordingly, the court finds that plaintiff has adequately alleged a claim for retaliation.

### 3. Section 1981 Claims

Plaintiff alleges discrimination and retaliation under section 1981 of the Civil Rights Act of 1964. As section 1981 does not protect against instances of gender discrimination, plaintiff's claim must derive from instances of racial discrimination. *See Jenkins v. Arcade Bldg. Maint.,* 44 F. Supp. 2d 524, 529 (S.D.N.Y. 1999). Plaintiff is not a member of a racial minority group and has not alleged discrimination based on her race. Rather, her claim is that defendant punished her vindication of the rights of minorities. *See Albert v. Carovano*, 851 F.2d 561, 571 (2d Cir. 1988) (citing *Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 237 (1969)). Thus, plaintiff has not adequately alleged facts to assert a section 1981 discrimination claim, only a retaliation claim.

Section 1981 retaliation claims are analyzed pursuant to Title VII principles. *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). Plaintiff alleges that in March 2008, she "was able to convince management" that firing three African American employees "would be inappropriate . . . ." (Item 1, ¶ 23). Thereafter, in June 2008, plaintiff's employment was terminated, allegedly in retaliation for this activity and in close temporal proximity to the protected activity. For the same reasons that plaintiff's Title VII retaliation claim survives the motion to dismiss, defendant's motion to dismiss the section 1981 retaliation claim is denied.

### 4. Plaintiff's Family and Medical Leave Act Claim

The FMLA grants eligible employees the right to a total of 12 work weeks per year of unpaid leave in order to care for a spouse or immediate family member with a serious health condition. *See* 29 U.S.C. § 2612(a)(1)(C). Employees who utilize such leave must

11

be allowed to return to a prior position or an "equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(B). The FMLA creates a private right of action for employees whose employers "'interfere with, restrain, or deny the exercise of' FMLA rights." *Sista v. CDC Ixis N. Am., Inc.,* 445 F.3d 161, 174 (2d Cir. 2006) (quoting *Nev. Dep't of Human Res. v. Hibbs,* 538 U.S. 721, 724-25 (2003)). The court notes that plaintiff has alleged a claim of "discrimination" under the FMLA (Item 1, ¶ 45). However, the Second Circuit has only recognized two categories of claims under the FMLA–"interference" and "retaliation." *Potenza v. City of New York,* 365 F.3d 165, 168 (2d Cir. 2004). An interference claim could arise where an employer refused to authorize FMLA leave, discouraged an employee from using such leave, or discriminated against an employee who has used such leave. *See Potenza,* 365 F.3d at 167 (citing 29 C.F.R. § 825.220(b)(c)). As plaintiff has not alleged that defendant prevented or discouraged her from taking leave under the FMLA, or otherwise discriminated against her on the basis that she used FMLA leave, the court will assume that plaintiff seeks to allege a claim of retaliation under the FMLA.

To show a claim of retaliation under the FMLA, plaintiff must show that (1) she exercised rights protected by the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *See Reilly v. Revlon, Inc.,* 620 F. Supp. 2d 524, 537-38 (S.D.N.Y. 2009) (citing *Potenza,* 365 F.3d at 168). Here, plaintiff has alleged that she was granted FMLA leave, but was not returned to the same

or equivalent position at the conclusion of her leave, and then was terminated in retaliation for her exercise of rights under the FMLA.

Plaintiff has established the first three prongs of her FMLA claim. In her complaint, plaintiff alleges that "[i]n March of 2008, Plaintiff took an approved leave under FMLA, which lead [sic] to the reassignment of her job duties. Defendant later pointed to this as a reason for the elimination of Plaintiff's position" (Item 1, ¶ 14.) She also alleges that "[d]efendant engaged in a pattern and practice of discrimination . . . by reassigning her responsibilities and planning the reorganization of her department by failing to reinstate her to the same or an equivalent position at the end of her leave." *Id.*, ¶ 44. In her memorandum of law in opposition to the motion, plaintiff argues that duties were taken away from her in retaliation for her taking FMLA leave, including those responsibilities requiring access to payroll information (Item 11, p. 15). Temporal proximity between a plaintiff's exercise of rights created by FMLA and adverse employment action can give rise to an inference of retaliation. *See Reilly v. Revlon, Inc.,* 620 F. Supp. 2d at 538. In this case, the alleged adverse actions were taken within weeks of plaintiff's exercise of rights under the FMLA. *See Emmons v. City Univ. of New York,* ___ F. Supp. 2d ___, 2010 WL 2246413, at *17 (E.D.N.Y. June 2, 2010) (plaintiff's allegation that she was fired two months after taking FMLA leave stated a claim for FMLA retaliation). Accordingly, the motion to dismiss plaintiff's FMLA claim is denied.

### 5. Plaintiff's Equal Pay Act Claim

Finally, plaintiff alleges a claim under the Equal Pay Act, 29 U.S.C. § 206(d). To state a *prima facie* case of pay discrimination, plaintiff must show that (1) the employer

13

pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions. *Zimmerman v. Teachers' Ret. System of City of New York*, 2010 WL 1172769, at *12 (S.D.N.Y. March 8, 2010), *Report and Recommendation adopted by* 2010 WL 2034436 (S.D.N.Y. May 20, 2010). Plaintiff alleges that her salary was "approximately $8,000 lower per year than a recently hired male recruiter," and this male recruiter "was also eligible for collection management bonuses that could have totaled as much as $5,500, while the Plaintiff was eligible to receive bonuses of less than $100, as part of the support team." (Item 1, ¶ 25). Thus, plaintiff has sufficiently established the first prong of the pay discrimination analysis. She has not, however, alleged that the two employees performed "equal work on jobs requiring equal skill, effort, and responsibility" nor has she established both jobs "are performed under similar working conditions." *Zimmerman*, 2010 WL 1172769, at *12. Plaintiff merely states that she allegedly "had a longer tenure with the Defendant and much more substantial relevant experience and responsibilities" (Item 1, ¶ 25). From this scant information, plaintiff arrives at the conclusion that defendant subjected her to pay discrimination. Plaintiff does not describe her job responsibilities in comparison to the job responsibilities of the male recruiter. "Even at the motion to dismiss stage, vague, conclusory, and speculative allegations will not save an Equal Pay Act claim." *Bass v. World Wrestling Fed'n Entm't, Inc.*, 129 F. Supp. 2d 491, 503 (E.D.N.Y. 2001). Plaintiff has alleged no facts which show that she and the male recruiter "performed substantially equal work." *Gibson v. Jacob K. Javits Convention Ctr.*, 1998 WL 132796, at *3 (S.D.N.Y. March 23, 1998) (stating facts

which do not allege plaintiff and opposite sex employee performed substantially equal work "cannot form the basis for an Equal Pay Act claim"). Indeed, statements in plaintiff's complaint give rise to the opposite inference as the male recruiter was eligible for "collection management" bonuses, while plaintiff, who described her position as a "Human Resources Director" was eligible for bonuses "as part of the support team." Thus, plaintiff has failed to allege facts sufficient to state a claim under the Equal Pay Act.

## 6. Defendant's Motion to Strike

Defendant argues that certain paragraphs in the complaint should be stricken pursuant to Fed. R. Civ. P 12(f) as "redundant, immaterial, impertinent or scandalous . . . ." Specifically, defendant argues that plaintiff has included hearsay allegations of past discrimination or discriminatory intent by defendant or references to preliminary steps in the administrative process.

The Second Circuit has cautioned that a motion to strike should not be granted "unless there is a strong reason for so doing." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). In a motion to strike pleadings, a moving party must show that (1) no evidence in support of the allegation would be admissible; (2) the allegation has no bearing on relevant issues; and (3) allowing the allegation to stand would result in prejudice to the movant. *Hargett v. Metro. Transit Auth.*, 552 F. Supp. 2d 393, 404 (2d Cir. 2008). "Resolution of a Rule 12(f) motion is left to the district court's discretion." *E.E.O.C. v. Bay Ridge Toyota, Inc.*, 327 F. Supp. 2d 167, 170 (E.D.N.Y. 2004).

In paragraphs 11, 12, and 13, plaintiff states that minority representation among management at the defendant company was limited, that defendant was a "woman-owned

business" because the owner's sister and girlfriend were given titles, and that other businesses owned by defendant's chairman were involved in discriminatory practices which resulted in a lawsuit that had been settled. With the exception of paragraph 11, which is arguably relevant, these allegations are not relevant to the plaintiff's claims of retaliation. Additionally, the probative value of such allegations is likely to be outweighed by prejudice to the defendant, and evidence of such matters would be inadmissible. Accordingly, paragraphs 12 and 13 should be stricken.

In paragraph 19, plaintiff states that the investigation of the employee complaint was taken from her and reassigned to another employee without human resources experience. Similarly, in paragraph 23, plaintiff alleges that she convinced management not to fire certain minority employees. Both of these allegations are relevant to plaintiff's claims of retaliation. However, in paragraph 20, plaintiff provides hearsay details regarding the offending employee who was involved in the incident she investigated. In paragraph 24, plaintiff recounts the alleged reaction, which could be construed as a racist remark, of defendant's chairman to an employee complaint. Neither allegation is relevant to plaintiff's claims, and evidence of such matters would be inadmissible and prejudicial. Accordingly, paragraphs 20 and 24 should be stricken.

Finally, in paragraphs 28, 29, and 30, and Exhibit A to the complaint, plaintiff references the filing of her administrative charge with the SDHR, the dismissal of that action, and her request for a "right to sue" letter. These allegations and the exhibit are relevant to plaintiff's claims and are neither redundant, impertinent, nor scandalous. Accordingly, the motion to strike is denied as to these allegations.

## **CONCLUSION**

For the aforementioned reasons, the motion to dismiss is granted in part, but denied with respect to plaintiff's claims for retaliation under Title VII, 42 U.S.C. § 1981, the NYSHRL, and the FMLA. The motion to strike is granted as to paragraphs 12, 13, 20, and 24. The parties shall participate in a telephone conference on October 18, 2010 at 2 p.m. to determine a further schedule. The court will initiate the call.

So ordered.

           \s\ John T. Curtin
           JOHN T. CURTIN
           United States District Judge

Dated: October 4      , 2010
p:\opinions\09-1063.sep282010